EL PUEBLO DE PUERTO RICO, representado por el COMISIONADO DE LO INTERIOR INTERINO, JESÚS BENÍTEZ CASTAÑO, demandante, apelante y apelado, *v.* ROBERTO M. COLÓN ET AL., demandados, apelados y apelante el primero.

Núm. 10505.—*Sometido:* Enero 9, 1952. *Resuelto:* Junio 26, 1952.

Hon. *Procurador General Víctor Gutiérrez Franqui* y *Clemente Pérez Martínez* y *Alejandro Romanace, Procuradores Generales Auxiliares,* abogados del apelante-apelado; *Orlando J. Antonsanti* y *René Benítez,* abogados del apelado-apelante.

EL JUEZ PRESIDENTE SEÑOR TODD, JR., emitió la opinión del tribunal.

El Pueblo de Puerto Rico, al iniciar esta acción para expropiar 3.037 cuerdas de terreno equivalentes a 11,936 metros cuadrados, pertenecientes a Roberto M. Colón, depositó en corte la suma de $9,863.33 como justa compensación. El demandado alegó que la parcela valía $96,868.13 y además que la misma había sido damnificada como consecuencia directa de la expropiación en la suma de $35,000. Visto el caso el Tribunal de Expropiaciones resolvió que la parcela constaba de 12,402.05 metros cuadrados y su valor era el de $24,804.10 (o sea $2 el m/c) y además que el demandante debía pagar $3,000 por los daños por segregación ocasionados a la finca principal donde radicaba la residencia del demandado. Dictó sentencia condenando al demandante a pagar al demandado la diferencia entre la suma consignada, $9,863.33, y $27,804.10, más intereses legales.

No conformes con la sentencia ambas partes apelaron y los recursos han sido consolidados. Consideraremos en primer término la apelación del demandante.

Señala dos errores al efecto de que el tribunal inferior erró al valorar el predio expropiado a razón de $2 el metro cuadrado utilizando un método de valoración inaplicable en casos de expropiación de fajas de terreno a ser usadas para la construcción o ensanche de carreteras públicas y al no admitir en evidencia la planilla de contribuciones sobre ingresos de la Roberto Colón Manufacturing Co. rendida en 1947 para impugnar la credibilidad de Roberto Colón como testigo.

■■ El primer señalamiento lo basa el demandante en tres fundamentos distintos. Arguye que fué error de la corte admitir como venta similar la de una parcela de 877 m/c a razón de $4 el m/c, por cuanto debido a la diferencia

en cabida con la expropiada, que consta de 12,402.05 m/c, no podía servir de base para establecer el precio en el mercado de esta última. Si bien cita nuestra decisión en el caso de *Pueblo* v. *Carmona*, 70 D.P.R. 312, que le es adversa, sostiene que la misma fué modificada por nuestra decisión *per curiam* en el de *Pueblo* v. *Soc. Agrícola Mario Mercado e Hijos*, resuelto el 17 de noviembre de 1950.

Debemos aclarar que no fué esa venta de una parcela de 877 m/c la única admitida como prueba y tomada en consideración por la corte. Por el contrario, se ofrecieron y admitieron varias ventas similares y la corte en su opinión, al hacer referencia a ellas, dijo lo siguiente:

"Tanto la prueba del demandante como la del demandado comprendió transacciones de predios que fluctuaron desde fincas de 500 cuerdas a parcelas de 7,000 metros. Las hemos analizado todas en conjunto (todas las que admitimos), para justipreciar en último análisis los efectos de las mismas dentro de este caso, tomando en consideración además todo el resto de la prueba practicada y por lo tanto todos los factores e índices de valoración considerables, que ella suscitaba. Creemos que tanto las transacciones ofrecidas en evidencia por las partes de fincas de menor cabida como de mayor cabida, ofrecen por vía de contraste, *cuando no por su similar cabida y otros factores concurrentes, luz y orientación al Tribunal* en cuanto al valor justo y razonable en el mercado al tiempo de la incautación del predio expropiado. *Todas han pesado en el ánimo del Tribunal.* No creemos que es buena práctica seguir ciegamente alguna de ellas en particular. A cada una debe dársele el peso probatorio que le corresponda en unión a toda la demás prueba desfilada. ... " (Bastardillas nuestras.)

Y al referirse a la parcela de 877 m/c se expresó así:

"La cabida de la parcela envuelta en esta transacción es de 877 m/c y la de la parcela expropiada 12,402.05 m/c, pero ello por sí solo no hacía inadmisible esta transacción. Creemos que las transacciones ofrecidas en este caso por El Pueblo de Puerto Rico envuelven una mayor desproporción excepto una, que la que nos ocupa. Sin embargo, aun ellas ofrecen por vía de contraste elementos de juicio que ayudan al Tribunal a hacer un equitativo justiprecio en este caso."

Nuestra decisión en *Pueblo* v. *Soc. Agrícola Mario Mercado e Hijos*, supra, al efecto de que no había cometido error la corte inferior al no admitir como prueba de ventas similares las de unos solares que fluctuaban entre 129 y 1,800 m/c, tratándose de una expropiación de una parcela de 20,000 m/c, no modificó la de *Pueblo* v. *Carmona*, supra, en el cual resolvimos que la corte inferior no erró al admitir prueba de ventas similares de parcelas de 200, 400 y 1,000 m/c en relación con una expropiación de una finca de 1.90 cuerdas, según lo demuestran los casos posteriores de *Pueblo* v. *Sucn. Rabell*, 72 D.P.R. 574 y *Autoridad sobre Hogares* v. *Viera*, 72 D.P.R. 732, en los cuales se hizo patente que es cuando las parcelas objeto de lo que se pretendía eran ventas similares, no sólo por su cabida sino también por su topografía y localización, no eran realmente similares a la expropiada, que dichas ventas son indamisibles como prueba.

No existe una regla fija en cuanto al particular que discutimos y en cada caso el tribunal debe ejercitar su sana discreción con la cual no intervendremos a menos que se demuestre un claro abuso de dicha discreción, lo cual no sucede en el presente caso. *Autoridad sobre Hogares de P. R.* v. *Valldejuli*, 71 D.P.R. 640 y véanse Anotaciones en 118 A.L.R. 869, 883 *et seq.* y 174 A.L.R. 386, 390 *et seq.*

El segundo punto levantado por el demandante en este señalamiento es al efecto de que el tribunal erró al admitir en evidencia la compraventa de una parcela de 7,305.43 m/c, a razón de $2.50 el m/c, por carecer la misma de voluntariedad.

Surge de la prueba que la Caribe Motors Corporation era dueña de un edificio ubicado en un solar de El Pueblo de Puerto Rico en Puerta de Tierra, el cual lo construyó para poseerlo y usarlo durante veinte años al final de cuyo período dicho edificio revertiría para beneficio y uso de El Pueblo. El ejército expropió durante la guerra el referido edificio y la Caribe Motors, necesitando espacio para acomodar sus vehículos y viéndose obligada a mudarse, tuvo que comprar

un solar que se le ofreciera. José M. González, quien era miembro de la Junta de Directores de la Caribe Motors, le cedió a ésta en arrendamiento el solar de 7,305.43 m/c por $1 al año, obligándose la corporación a pagar las contribuciones territoriales. Entre las condiciones del contrato de arrendamiento, la corporación podía ejercitar la opción de comprar dicho solar y de no hacerlo, todas las mejoras que se hubiesen efectuado en el mismo quedarían para beneficio y uso del arrendador. La Caribe Motors construyó en dicho solar un edificio que le costó aproximadamente $37,000 y luego lo adquirió al precio de $2.50 el m/c.

Debemos enfatizar que el único motivo de impugnación que hace el demandante a esta venta es porque aparentemente careció de voluntariedad aceptándose que la venta fué contemporánea y de terrenos similares. Argumentando este error, el demandante sostiene primero, que habiéndose otorgado en el año 1942 un contrato de arrendamiento con opción de compra inducida a ello la Caribe Motors por haber el ejército expropiado el edificio que dicha corporación tenía, y segundo, habiéndose ejercitado la opción de compra en el año 1946, ratificada en el 1947, después de haber construído en la parcela arrendada un edificio de $37,000, construcción que hubiera revertido al arrendador, dicha corporación no estaba en condiciones de discutir el precio de $2.50 el m/c fijado en el contrato. Arguye, además, que dicha parcela fué adquirida por razones urgentes resultantes de la última guerra y por tanto, su venta no puede considerarse como una transacción voluntaria.

Hemos resuelto que en casos de expropiación forzosa ventas contemporáneas de terrenos similares son admisibles en evidencia siempre que dichas ventas sean libres y voluntarias. *Pueblo v. Lamboglia*, 70 D.P.R. 810; *Pueblo v. Huyke*, 70 D.P.R. 754; *Pueblo v. Carmona*, supra; *Autoridad sobre Hogares de P. R. v. Valldejuli*, supra; *Pueblo v. Sucn. Rabell*, supra.

En el caso de *Autoridad sobre Hogares de P. R.* v. *Vallde-juli*, supra, en el cual estaba envuelta la cuestión de si compras contemporáneas de terrenos similares por el propio expropiante eran admisibles en evidencia, al resolverla en la afirmativa, dijimos a la pág. 643: "Finalmente, para determinar si la venta fué voluntaria, la corte inferior, igual que en la determinación de si la venta fué contemporánea y de propiedades similares, debe ejercitar una sana discreción, que raras veces requiere revocación. (Citas.)"

Al exponer los motivos que tuvo para admitir la prueba de la compra realizada por la Caribe Motors, para darle el peso probatorio correspondiente en unión al resto de la prueba, el tribunal inferior se expresó en estos términos:

"Dicha venta se realizó a razón de $2.50 el metro cuadrado. Cierto es que la Caribe Motors Corporation en 1946, y ya terminada la guerra, tenía que o comprar a ese precio en virtud de un contrato anterior de opción y arrendamiento suscrito por las partes en 1942 o arrendar la parcela mencionada por un término no menor de 5 años ni mayor de 25 a razón del 6 por ciento anual a base de $2.50 el metro cuadrado. (Véase *Exhibit* núm. 1 de la parte demandada.) Era ése su derecho. Para esa fecha ya la Caribe Motors había construído en esa parcela un edificio cuya construcción costó, según el testigo Sr. Conway, $37,000. Pero todas las circunstancias que revela la prueba demuestran que siempre la Caribe Motors tuvo la intención de ejercitar la opción que obtuvo para comprar dicha parcela desde el año 1942. Más aún, Caribe Motors no venía obligada a comprar a la Sucesión González, antes Don José María González, a ese precio y pudo muy bien hacer lo mismo que hizo con el edificio que construyó en Puerta de Tierra en terrenos arrendados al Gobierno Insular, en cuyo caso el edificio construído por la Caribe Motors pasaría al cabo de 30 años de arrendamiento al Gobierno Insular para su beneficio, o sea, que pudo la Caribe Motors usar la parcela en cuestión en arrendamiento por el término de 25 años a que tenía derecho y dejarle a beneficio de la Sucn. González luego el edificio construído en dicha parcela. Por ello creemos que esta transacción no está desprovista del elemento de la voluntariedad de tal suerte que la haga inadmisible."

Es cierto, como dice el tribunal inferior, que la prueba del demandado demostró, a través de la declaración de Charles Conway, Presidente de la Caribe Motors, que dicha corporación siempre tuvo la intención de comprar la propiedad desde que se le otorgó la opción de compra en el año 1942. Además, si tomamos en consideración que el precio de $2.50 el m/c fué fijado en el año 1942 y la venta fué realizada en 1946 y consumada en 1947, no podemos convenir con el demandante en que dicha compraventa, bajo las circunstancias concurrentes, carecía de voluntariedad. Es de conocimiento general que los precios en el mercado, de una propiedad como la que fué objeto de esta transacción, en el año 1942 eran más bajos que los que prevalecían en el 1947, fecha de la expropiación en el presente caso. No puede decirse que la Caribe Motors se vió precisada a pagar un precio más alto en 1946 al ejercitar la opción. Nada encontramos en el récord que tienda a demostrar tal cosa.

██ No se cometió este aspecto del error pero sí el que se refiere al haber admitido el tribunal a quo otro contrato de arrendamiento con opción de compra otorgado por la Sucesión de José María González con la Royal Crown Cola Company en relación con una parcela similar a la expropiada, a razón de $4 el m/c. Hemos resuelto que una opción de compra es inadmisible en estos procedimientos para probar el valor de la propiedad expropiada. *Pueblo* v. *Soc. Agrícola Mario Mercado e Hijos*, supra. No obstante haberse admitido erróneamente esta transacción, no consideramos que se haya perjudicado el demandante ya que el precio fijado a la parcela expropiada fué el de $2 el m/c.

█ Por último, en este señalamiento el demandante sostiene que los beneficios recibidos por el remanente de la finca del demandado como consecuencia de la expropiación, que era con el fin de ensanchar la carretera existente, compensan los daños que pudo haber recibido la finca del demandado. No tiene razón. Los beneficios obtenidos por el remanente de la finca del demandado son de carácter general a la comunidad

con motivo de la expropiación para el fin indicado. *Pueblo v. Soc. Agríc. Mario Mercado e Hijos*, 72 D.P.R. 792, 809–10.

 No se cometió el primer error señalado por el demandante y tampoco el segundo. La declaración sobre ingresos de la Roberto Colón Mfg. Co. para el año 1947 y las ganancias o pérdidas que en ella aparecían en relación con la venta que le hizo al demandado en el año 1943 de una de las fincas, de la cual una parte fué objeto de la presente expropiación, habiéndose pagado por el demandado con acciones de la corporación, aun cuando hubiera podido servir de base para impugnar la declaración del demandado en cuanto al precio que pagó por dicha finca—de ser admisible la declaración sobre ingresos, cuestión que no consideramos necesaria resolver—dicha impugnación hubiera sido sobre una cuestión colateral a la cuestión en controversia en el caso, o sea la valoración de la parcela expropiada.

El valor de las acciones a la fecha de la compra del terreno en el año 1943, o las pérdidas o ganancias de la corporación expresadas en su declaración sobre ingresos, no son factores del valor de la parcela a la fecha de la expropiación. A los efectos de la justa valoración debe considerarse el precio que un comprador en una venta no forzada estaría dispuesto a pagar y aquél por el cual un vendedor, en las mismas circunstancias, estaría dispuesto a vender, consideradas las condiciones del terreno en la fecha de la expropiación y el uso más productivo a que el dueño pudiera dedicarlo dentro de un futuro razonablemente cercano. *Pueblo v. Huyke*, 70 D.P.R. 754. No importa cuál fué el precio pagado por la finca de la cual fué expropiada la parcela, lo importante era determinar su valor a la fecha de la expropiación.

 Pasemos a considerar la apelación del demandado. Tres errores señala, los cuales pueden resumirse en uno, al efecto de que el tribunal inferior erró al no admitir en evidencia la prueba de que el demandante había tasado y consignado, a los efectos de expropiar en este mismo procedi-

miento terrenos situados frente a frente a los del demandado a razón de $4 el m/c. El tribunal se expresó en los siguientes términos en relación con esta prueba:

"...En el presente caso el demandado presentó y fué rechazada, evidencia al efecto de que El Pueblo de Puerto Rico tasó y pagó por terrenos frente a frente a los del demandado por una parcela de 1,300 y pico de metros a razón de $4 por metro cuadrado. Tal evidencia es inadmisible conforme a la jurisprudencia aplicable a los casos de expropiación forzosa.

" 'In consolidated proceedings by United States to condemn lands in Iowa, permitting cross examination of government's witnesses as to prices paid by government for *other tracts taken for same project constituted prejudicial error.*' *U. S.* v. *Foster,* CCA Iowa 1942, 131 F.2d 3.

"Admitir esa evidencia obligaría al Tribunal a entrar en controversias colaterales que en nada ayudarían al Tribunal ya que los tribunales tienen que llegar a sus propias conclusiones conforme a la prueba practicada y no dejarse guiar por la justicia o injusticia de una tasación anterior practicada por determinado tasador para El Pueblo de Puerto Rico. Si El Pueblo de Puerto Rico basado en la opinión de un tasador pagó en procedimiento de expropiación forzosa tal o cual suma por metro cuadrado, está fuera de nuestra jurisdicción y misión judicial entrar a considerar la bondad o maldad o la procedencia o improcedencia de tal hecho, en éste, que es un pleito distinto al que aludía la evidencia ofrecida y rechazada."

Arguye el demandado que bajo la regla de admisibilidad como prueba de compraventas similares, cuando una de las partes es El Pueblo de Puerto Rico, establecida en el caso de *Autoridad sobre Hogares de P. R.* v. *Valldejuli,* supra, también debe ser admisible el precio que, en procedimiento de expropiación, El Pueblo le ha fijado a una parcela similar. No podemos convenir con el demandado. La regla de admisibilidad adoptada en el caso de *Valldejuli* está sujeta a que se pruebe la voluntariedad de la compraventa entre ambas partes contratantes. En un procedimiento de expropiación no existe tal voluntariedad. El mero hecho de tener que acudir a ese procedimiento indica que las partes no pudieron

convenir libremente en cuanto al precio. Como se dice en 2 Nichols *on Eminent Domain*, 2da. ed., sec. 456, pág. 1199:

"...Ventas forzadas, tales como venta de propiedad por un administrador, o una venta al ejecutarse una hipoteca, no son admisibles, porque no demuestran valor en el mercado. Por la misma razón no es competente para cualquiera de las partes presentar en evidencia *el precio pagado por la parte expropiante a dueños de tierras adyacentes tomadas al mismo tiempo y como parte del mismo procedimiento, no importa cuán similar puedan ser a aquélla en controversia, bien se haya pagado como resultado de una transacción voluntaria, de una decisión o del veredicto de un jurado.* ..." (Bastardillas nuestras.)

*No habiéndose cometido los errores señalados, debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Negrón Fernández se inhibió.