EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, REPRESENTADO POR EL GOBERNADOR DE PUERTO RICO, demandante y recurrente *v.* 317.813 CUERDAS DE TERRENO EN FAJARDO, PUERTO RICO, TOMÁS RAMÍREZ, FEDERAL LAND BANK OF BALTIMORE Y RAMÓN WESTERN, demandados y recurridos.

*Número:* 12167. *Resuelto:* 24 de noviembre de 1961.

2

*J. B. Fernández Badillo, Secretario de Justicia; Arturo Estrella, Secretario Auxiliar de Justicia, V. M. Sánchez Fernández, Procurador Auxiliar y Nilita Vientós Gastón, Procuradora Auxiliar,* abogados del recurrente; *B. Sánchez Castaño y R. Rivero Cervera,* abogados de los recurridos.

Sala integrada por el Juez Asociado Señor Belaval, como Presidente de Sala, y los Jueces Asociados Señores Santana Becerra y Blanco Lugo.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

A requerimiento de la Compañía de Fomento Industrial y con el fin de facilitar el desarrollo de la industria turística de Puerto Rico, el Estado Libre Asociado de Puerto Rico presentó el día 27 de enero de 1955, un procedimiento de expropiación contra don Tomás Ramírez, para obtener dos parcelas de terrenos del Barrio Quebrada Fajardo del municipio de Fajardo, Puerto Rico; una señalada en los planos bajo la letra A, con una superficie de 85.339 cuerdas y la otra señalada bajo la letra B, con una superficie de 232.474 cuerdas. Según la prueba documental del caso, la parcela B tiene un extenso litoral que constituye la mayor parte de su colindancia noroeste y una larga riberilla con la laguna Aguas Prietas, que constituye asimismo, la mayor parte de su colindancia este. El Estado depositó la cantidad de cincuenta y cuatro mil ochocientos ochenta y ocho dólares con setenta y tres centavos o sea a razón de ciento setenta y tres dólares con setenta y nueve centavos la cuerda la parcela señalada bajo la letra A y a razón de ciento setenta y dos dólares con treinta y un centavos la cuerda la parcela señalada bajo la letra B, como valor justo y razonable de las parcelas expropiadas.

No estando conforme el Sr. Ramírez con dicha valoración, contestó la demanda, alegando en contrario, que el valor de la propiedad tomada era de ciento once mil doscientos treinta

y cuatro dólares con cincuenta y cinco centavos, o sea, a razón de trescientos cincuenta dólares la cuerda. Después de celebradas las vistas de rigor, la ilustrada Sala sentenciadora llegó a la conclusión que el valor razonable de las parcelas expropiadas era de doscientos cuarenta dólares ($240.00) la cuerda y le ordenó al Estado depositar adicionalmente la cantidad de veintiún mil trescientos ochenta y seis dólares con treinta y nueve centavos, más intereses a razón del seis por ciento anual, a contar desde la fecha de la radicación del procedimiento.

Los fundamentos que expuso la ilustrada Sala sentenciadora para determinar el aumento en valor, son los siguientes: se trata de una finca de topografía ondulada, variando su declive de 0 a 45º; su mejor uso es para fines agrícolas y pasto para ganado; que después de adquirir la finca por el dueño expropiado, éste procedió a limpiar y a acondicionar la misma eliminando también de ella las partes de maleza que tenía, añadiendo: "tomando en consideración el testimonio de las partes, el acondicionamiento y limpieza de que fue objeto la misma, lo observado por el Tribunal durante la inspección ocular y la venta de una finca propiedad del demandado Tomás Ramírez, de la cual formaba parte el terreno aquí expropiado, por la suma de doscientos setenta y cinco dólares ($275.00) por cuerda, según escritura núm. 15 de compraventa otorgada por Tomás Ramírez a favor de Ramón Otilio Soto en Fajardo, P.R., el día 9 de febrero de 1956, ante el Notario Antonio J. Matta (véase exhibit "X" de ambas partes); así como considerando además, toda la evidencia en conjunto que tiende a indicar el valor razonable en el mercado, el Tribunal llega a la conclusión de que dicho valor asciende a un promedio de doscientos cuarenta dólares ($240.00) por cuerda. El Tribunal no toma en consideración el valor pagado por el Estado Libre Asociado de Puerto Rico por terrenos adyacentes, ya que a nuestro juicio, el valor razonable de la misma debe determinarse según las circunstan-

cias por las condiciones de la finca así como el precio pagado según el exhibit "X" de ambas partes". De esta determinación no apeló el dueño expropiado pero si lo hizo el Estado.

Las objeciones del Estado son las siguientes: (1) el Tribunal a quo, cometió error al resolver que el valor razonable de la propiedad debe determinarse, según las circunstancias, por las condiciones de la finca; (2) cometió error al resolver que el valor de la parcela debe determinarse además por el precio a que se vendió el remanente de la finca, una vez efectuada la expropiación; (3) cometió error de derecho en la apreciación de la prueba al resolver que la finca expropiada tenía un valor de $76,275.12; (4) cometió error al no dar consideración y peso a las ventas de terrenos similares presentadas por el demandante recurrente; (5) cometió error al resolver que la suma de $54,888.73 consignada por la parte demandante recurrente no constituye el valor justo y razonable de la parcela expropiada; (6) cometió error al resolver que el dinero gastado en el acondicionamiento y limpieza de la finca por el demandado recurrido era un factor determinante a considerar en la valoración de la misma; (7) cometió error al declarar que los testigos Pablo Calderón, Juan Zalduondo y Carlos Esteva, hijo, estaban cualificados para declarar sobre el valor de la finca expropiada; (8) cometió error al admitir ofertas para la compra de terrenos; (9) cometió error al admitir prueba de una venta de terrenos sin haberse probado que los mismos eran similares a la parcela expropiada tomando solamente en consideración el valor para el adquirente; (10) cometió error al permitir que se probaran tasaciones y valores establecidos en casos de expropiaciones forzosas.

▬▬ 1–2 El criterio seguido por la ilustrada Sala sentenciadora, en el sentido que, "el valor razonable de la misma debe determinarse según las circunstancias por las condiciones de la finca" es otra forma de expresar el concepto establecido por nuestra opinión en el caso de *Pueblo* v. *Huyke*, 70 D.P.R.

754, (De Jesús), (1950), cita precisa a la pág. 757, en el que se resuelve: "a los efectos de la justa valoración, precisa considerar ... el precio que un comprador en una venta no forzada estaría dispuesto a pagar y aquel en que un vendedor, en las mismas *circunstancias*, estaría dispuesto a vender, consideradas las *condiciones* en que se halle el terreno en la fecha de la expropiación..." (Bastardillas nuestras.) Que la ilustrada Sala sentenciadora determinara como una venta-tipo, no forzada, en las mismas circunstancias, consideradas las condiciones del terreno adyacente, otra venta por el mismo expropiado del remanente de la finca que no fue objeto de expropiación, para fijar el valor de las parcelas expropiadas, no constituye error. Aquí se da el caso, a la inversa,—una venta posterior por el expropiado y no por el expropiante— que consideramos en *Autoridad sobre Hogares de Puerto Rico* v. *Valldejuli*, 71 D.P.R. 640, (Snyder), (1950), cita precisa a las pags. 641–643, y a nuestro juicio, resiste la ulterior aclaración que contiene el caso de *Pueblo* v. *Colón*, 73 D.P.R. 579, (Todd hijo), (1952), cita precisa a las págs. 588–589, en el sentido que "'la regla de admisibilidad adoptada en el caso de Valldejuli está sujeta a que se pruebe la voluntariedad de la compraventa entre ambas partes contratantes". Se trata de una segunda venta voluntaria, bastante contemporánea con la fecha de la expropiación puesto que se consuma un año después, en el curso ordinario del negocio jurídico. Como se resuelve en el caso de *Estado* v. *Ocean Park Development Co.*, 79 D.P.R. 158 (Snyder) (1956), cita precisa a la pág. 169, no se debe partir del principio que todo proyecto del gobierno aumenta el valor de los terrenos contiguos, a menos que la prueba demuestre una especulación extraordinaria producida por el proyecto público, situación no demostrada por la prueba.

 3 Hemos examinado la prueba de ambas partes y estamos completamente convencidos que el valor de $76,275.12 que fijó la ilustrada Sala sentenciadora, lejos de perjudicar

al Estado, lo favoreció. La ilustrada Sala sentenciadora al adoptar la regla un tanto arbitraria que utilizó para resolver el caso, no le dió consideración al valor panorámico del litoral para fines de turismo, (*amenities*) a pesar de la expresa admisión, que en tal sentido, contienen las propias alegaciones del Estado, y la elocuente demostración de tal valor panorámico que expone la prueba documental ofrecida por el propio Estado. Al adoptarse por los tribunales la norma que entre los fines de utilidad pública está el fin estético, véase, por ejemplo, *Berman* v. *Parker*, 348 U. S. 26, 99 L. ed. 27 (Douglas) (1954), cita precisa a las págs. 33 U. S., 38 L. ed., *López* v. *Junta de Planificación*, 80 D.P.R. 646, (Saldaña), (1958), cita precisa a las págs. 662–663; *E.L.A.* v. *Aguayo*, 80 D.P.R. 552, (Serrano Geyls) (1958), cita precisa a la pág. 603, es justo ampliar los conceptos y añadir al valor geológico o fisiocrático aquel derivado de la belleza del sitio, aunque se trate de un valor puramente contemplativo. La alegación que hace el Estado referente a que no debe considerarse dicho valor, porque para la utilización del mismo, se necesitaría una inversión cuantiosa, no nos convence. Casualmente, el propósito de nuestro programa público de incentivos industriales, es suplir los medios económicos que para tales empeños necesitarían los empresarios puertorriqueños.

4 El valor de las ventas similares, sin duda alguna, representa un índice confiable del valor fisiocrático, pero no debemos convertirlo en una medida absoluta o invariable, considerada la inestabilidad de los valores inmobiliarios en los países de evolución rápida, como es actualmente el nuestro: —*Vide* Canasi: "El Justiprecio en la Expropiación Pública" pág. 110 (edición de Roque Depalma, Buenos Aires 1952)— No hemos encontrado en nuestra jurisprudencia una declaración terminante de que el único elemento a tomarse en consideración sea el valor en comparación que demuestren las ventas similares. Siempre hemos agregado, que junto a este valor, debe tomarse en cuenta el valor potencial que repre-

senta el uso más adecuado en un futuro cercano. Basta considerar el aumento en valor que ha tenido el litoral puertorriqueño en los últimos diez años para darnos cuenta de la sabiduría de tal posición.

Además, durante una de las vistas de este caso, se produjo un movido incidente sobre la costumbre en boga de disimular el precio verdadero de la propiedad en las escrituras de compraventa a los fines de evadir el pago de contribución de ingresos sobre el exceso del precio anterior. Uno de los peritos del Estado aceptó que puede darse el caso que el precio escriturario se reduzca a los fines antes expuestos. Cuanto se ha generalizado esta práctica reprobable no aparece de la prueba, y por lo tanto, no nos sentimos obligados a reexaminar nuestra actual doctrina sobre el valor contemporáneo de las llamadas ventas similares; pero debemos estar conscientes de la reserva judicial sobre este extremo.

5 El Estado se querella que la ilustrada Sala sentenciadora no aceptara el precio consignado por ella como el valor justo y razonable de las parcelas expropiadas. La extensa declaración del perito del Estado Sr. Acevedo, demuestra que la base principal de la valoración oficial fue el valor fisiocrático, basado exclusivamente en la topografía y la composición del terreno a los fines de establecer la fertilidad para el uso agrícola, descartando todo valor potencial para un uso futuro próximo. Aunque la ilustrada Sala sentenciadora no lo dice claramente, además de ese valor actual, tomó en consideración otros factores—puesto que habla de los efectos de la prueba toda—y de su observación personal del terreno. Aunque el ilustrado Juez sentenciador no hizo acta de inspección, el demandante recurrente estuvo conforme que el Juez hiciera uso, al momento de fallar, de sus observaciones sobre el terreno. De todos modos, los factores de valoración del Estado están casi totalmente restringidos a un solo método de valoración.

■ 6 El factor monetario de lo gastado por el dueño en el acondicionamiento y limpieza de la finca, debe considerarse, cuando la prueba demuestra, como lo demostró en este caso, que al momento de la expropiación se habían hecho trabajo de talado de malezas, arreglo de caminos, siembras de yerba guinea y otros extremos que le dan más valor a la finca al compararse con lo que se pagó por ella como predio abandonado. Este trabajo se hizo antes de el dueño ser enterado que el Estado se proponía expropiar dichos terrenos. No se trata, pues, de mejoras hechas con el fin de especular con la necesidad del Estado, sino de mejoras corrientes y ordinarias para el mejor aprovechamiento del fundo. La diferencia en el valor de la finca limpia y la finca sin desmonte, se estableció pericialmente por la prueba del dueño expropiado, y no podemos concluir que se cometiera error al tomarlo en consideración para la fijación final del valor, aunque teóricamente, participe más de la naturaleza de un "daño" que de un "valor", situación que no debe preocuparnos puesto que nuestra Ley autoriza la compensación tanto del valor como como del daño.

■ 7 El Sr. Pablo Calderón hace el ochenta por ciento del negocio de fincas en Puerto Rico, ha sido miembro del Comité de Tasación Científica de Puerto Rico (t I-24); el Sr. Juan Zalduondo es ingeniero agrónomo, dice que casi se crió en la finca, objeto de la valoración, (t. I-34) y ha heredado dos mil cuerdas de terreno que cultiva, (t. I-36); el Sr. Carlos Esteva hijo es un experto en bienes raíces (*realtor*) se graduó de agrimensor en el Colegio de Agricultura de Mayagüez, y de químico en la Universidad de Cornell; ha sido Subcomisionado Interino de Agricultura de Puerto Rico y Director del Instituto del Tabaco de Puerto Rico y dirige el Centro Técnico Esteva en el cual se hace trabajo de tasación continuamente (t. II-3-5). La variedad de experiencias y conocimientos que presentan estos tres peritos nos convencen de su capacidad. Al momento de determinar sobre la capacidad

de un perito no podemos guiarnos por un criterio único de especialización o por un prurito de profesionalismo estricto sino del conocimiento adquirido a través de las materias científicas incluidas dentro de una profesión o el conocimiento adquirido a través de la experiencia cotidiana en una tarea o por contacto directo con alguna actividad del ser humano: *Pueblo* v. *López*, 76 D.P.R. 378 (Belaval) (1954), cita precisa a las págs. 383–384. La cuestión siempre deriva más al grado de credibilidad que merezca el testigo que a su falta de capacidad.

 8–10 Es claro que las ofertas de compra u opciones no son admisibles en la valoración de terrenos expropiados —*Pueblo* v. *Colón*, 73 D.P.R. 579 (Todd hijo) (1952), cita precisa a la pág. 586; que venta de terrenos que no son similares en cuanto a su topografía y localización tampoco son admisibles—*Pueblo* v. *Colón*, supra, cita precisa a la pág. 583—, aunque para determinar la similitud o disimilitud, no pueda establecerse una regla fija—*Pueblo* v. *Colón*, supra, cita precisa a la pág. 583. Y que las ventas hechas a personas con facultad para expropiar deben verse con mayor cautela que aquellas hechas a personas particulares—*Autoridad Sobre Hogares de P. R.* v. *Valldejuli*, 71 D.P.R. 640, (Snyder) (1950), cita precisa a las págs. 642–643—considerado el posible efecto coactivo de las primeras. Pero los errores que hayan podido cometerse al admitir en la prueba dichas ofertas, ventas disímiles, y valoraciones en expropiación, no constituyen error suficiente a producir una revocación, cuando es evidente que ninguna de ellas sirvió de fundamento a la sentencia.

*Debe confirmarse la sentencia apelada.*