Arbona Lago, Juez Ponente
*697 TEXTO COMPLETO DE LA SENTENCIA
Hechos
En el 1989, Drillex, Inc. (en adelante "Drillex”) fue contratada por El Trigal Investment, la demolición y deslinde de un promontorio (mogote) ubicado al sur del centro comercial Plaza Trigal. Con tal propósito Drillex realizó varias detonaciones durante los meses de enero a julio de 1989.
En agosto de 1989 residentes de las Urbanizaciones O'Neill, Extensión O'Neill, Villa Beatriz y el Sector Pueblito Rojo del Municipio de Manatí, ubicadas todas al sur del centro comercial Plaza Trigal, radicaron demanda en daños y perjuicios contra El Trigal Investment, S.E., el Municipio de Manatí y Drillex, Inc., alegando que como consecuencia de las detonaciones efectuadas por Drillex sus residencias sufrieron daños, consistentes en grietas en los techos y en las paredes, filtraciones, florescencias, desprendimientos de hormigón y de empañetado y manchas de corrosión y humedad.
La demanda fue desestimada en cuanto al Municipio de Manatí, al demostrarse que éste no había intervenido en el proyecto.
Ante instancia se presentó abundante prueba documental, testifical y pericial por ambas partes. Además, se llevaron a cabo tres inspecciones oculares. El 2 de diciembre de 1994 el Ilustrado tribunal de instancia dictó sentencia en la cual concluyó que no existía relación causal entre las operaciones y trabajos llevadas a cabo por Drillex y los daños reclamados por los demandantes-recurrentes.
No conformes con tal dictamen los demandantes-recurrentes acudieron ante el Tribunal Supremo mediante recurso de apelación, el cual fue denegado por resolución del 17 de noviembre de 1995 al no plantear el recurso una cuestión constitucional sustancial. El Tribunal Supremo remitió la causa al Tribunal de Circuito de Apelaciones. Los demandantes-recurrentes han acudido ante este tribunal, vía recurso de apelación, imputando la comisión de los siguientes dos errores:

"PRIMER ERROR: Incidió en manifiesto y claro error el Tribunal Sentenciador al darle mayor valor probatorio a un testimonio especulativo de un perito de los recurridos no especializado en la materia estructural y cuya labor rendida se limitó a realizar una mera inspección visual en contraste de un perito de los recurrentes, altamente cualificado en la materia estructural y cuyo testimonio está sólidamente sostenido en pruebas técnicas.

SEGUNDO ERROR: Erró el Tribunal Sentenciador al no establecer la relación causal provocadora de los daños entre la actuación negligente de los recurridos y los daños ocasionados a unas residencias que fueron construidas dieciocho (18) años antes."

Aun y cuando ambos señalamientos están estrechamente relacionados y podríamos atenderlos en conjunto, estimamos que abona a una mejor exposición, hacerlo por separado, aunque tengamos que repetir algún aspecto del caso.
Exposición v Análisis
I. Valor probatorio de peritaje
-A-
La Regla 53 de Evidencia, 32 L.P.R.A. Ap.IV, R. 53, dispone que "[tjoda persona está cualificada para declarar como testigo pericial si posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficientes para cualificarla como un experto o perito en el asunto sobre el cual habrá de prestar testimonio." El Tribunal Supremo de Puerto Rico, interpretando dicha disposición ha resuelto que: ”[n]o sólo cualifican los expertos en sentido estricto (médicos, científicos, arquitectos, ingenieros, etc.), sino cualquier persona que a juicio del juez que preside la causa tiene alguna preparación o conocimiento especial sobre la *698 materia objeto de la declaración. Aun la experiencia se incluye como criterio." San Lorenzo Trading Inc. v. Hernández, 114 D.P.R. 704, 710-711 (1983).
Por tanto, "al determinar sobre la capacidad de un perito para declarar, un tribunal no debe guiarse por el único de especialización o por un prurito de profesionalismo estricto, sino que debe tomar en cuenta el conocimiento adquirido por el perito a través de las materias científicas incluidas dentro de una profesión o el conocimiento adquirido por dicho perito a través de la experiencia cotidiana en una tarea o por contacto directo con alguna actividad del ser humano." E.L.A. v. 317.813 Cuerdas de Terreno, 84 D.P.R. 1, 10 (1961).
Tanto el perito de las demandadas-recurridas como el perito de los demandantes-recurrentes fueron admitidos como testigos periciales. Ambos acreditaron debidamente su "expertise" ante el tribunal de instancia y éste los encontró cualificados, sin que de autos conste objeción de parte.
-B-
Los demandantes-recurrentes exponen que incidió el tribunal de instancia al otorgar mayor valor probatorio al testimonio del perito de las demandadas-recurridas. Como se sabe, los tribunales de instancia tienen amplia discreción en la apreciación de la prueba pericial, Valldejuli Rodríguez v. A.A.A., 99 D.P.R. 917, 921 (1971) y no vienen obligados a adoptar la opinión, juicio, conclusión o determinación del perito, sobre todo cuando está en conflicto con el testimonio de otros peritos. En trámites judiciales como el del epígrafe convergen factores divergentes, tales como prueba de datos físicos y prueba de apreciación de comportamiento; ambas de naturaleza pericial que requieren de apreciación conjunta en forma diferencial. El Tribunal tiene plena libertad para adoptar criterio conforme a la apreciación o evaluación que entienda de la prueba pericial y hasta descartar de la misma, aunque parte de ella resulte ser técnicamente correcta. Prieto v. Maryland Casualty Co., 98 D.P.R. 594, 623 (1970). A este respecto, el aspecto probatorio de mayor relevancia descansa en el grado real de contacto que el testimonio pericial tiene con los hechos establecidos y creídos por instancia, Prieto v. Maryland Casualty Co., supra, págs. 623-626.
No obstante, aun cuando se le otorga amplia discreción a los tribunales de instancia, es norma reiterada que los tribunales apelativos están en libertad de aquilatar la eficacia y valor probatorio de la prueba pericial que desfiló ante el tribunal sentenciador. López Vázquez v. Hospital Presbiteriano, 107 D.P.R. 197, 201 (1978); Portilla v. Carreras de Schira, 95 D.P.R. 804, 812 (1968). En relación con la apreciación de la prueba pericial los tribunales apelativos se encuentran en igualdad de condiciones que los tribunales de instancia y en libertad de adoptar su propio criterio. Prieto v. Maryland Casualty Co., 98 D.P.R. 594, 623 (1970).
En la causa del epígrafe, la prueba pericial de las demandadas-recurridas nos parece convincente, satisfactoria y suficiente en derecho. Nuestra evaluación independiente de la prueba pericial coincide con la del tribunal "a quo". Veamos.
Mediante el testimonio del Ing. Emiliano H. Ruiz, perito de las demandadas-recurridas, se demostró que si bien es cierto que las estructuras reflejaban los daños reclamados, ellos eran preexistentes a las detonaciones efectuadas por Drillex. Dicho perito realizó un estudio en el que específicamente se abordó si existía alguna relación entre las detonaciones en controversia y los daños estructurales reflejados en las casas de los demandantes. Como parte del estudio se inspeccionó las residencias afectadas y se entrevistó a los residentes. Conforme a las entrevistas que se les hiciera a los demandantes, éstos alegaron que sus residencias no contaban con las deficiencias reclamadas antes de las detonaciones y también afirmaron que no habían pintado ni reparado las grietas luego de las detonaciones. Sin embargo, durante el examen el perito y sus ayudantes encontraron depósitos o sedimentos antiguos de pintura dentro de las grietas o fisuras. También encontraron que los techos de las residencias tenían residuos de tratamientos impermeabilizantes anteriores a las detonaciones, a pesar de que los demandantes habían afirmado que previo a las detonaciones no habían tenido allí problemas de humedad ni de filtraciones. Mediante las referidas inspecciones el perito de las demandadas-recurridas encontró más de un tipo de pintura y más de un tratamiento impermeabilizante, en la misma residencia. Todo ello quedó sustentado ante instancia mediante abundante evidencia ilustrativa, consistente de fotografías admitidas en evidencia durante el juicio.
*699 También, como parte del estudio realizado por el Ing. Ruiz se presentaron fotos, gráficas y cintas videomagnetofónicas (videos) sobre las inspecciones que realizó la co-demandada Drillex en algunas de las residencias de los demandantes-recurrentes, previo a las detonaciones en controversia. Tales estudios fueron utilizados por el Ing. Ruiz para establecer comparaciones sobre las condiciones estructurales de las residencias antes y después de las detonaciones realizadas por Drillex. Con tales comparaciones se pudo constatar que no habían ocurrido cambios visibles en las referidas residencias luego de las detonaciones. Las viviendas inspeccionadas con anterioridad a las detonaciones ya contaban con las mismas deficiencias que luego fueron objeto de reclamación en la demanda. Aquellos demandantes que admitieron tener deficiencias previas, alegaron que se trataba de grietas pequeñas y que algunas las habían resanado con masilla. No obstante, mediante el testimonio del Ing. Ruiz, quedó demostrado ante instancia que las grietas previas no se habían extendido y que aquellas grietas que habían sido masilladas no se habían afectado con las detonaciones ocasionadas por la co-demandada Drillex.
Instancia también recibió y admitió en evidencia informes sobre el estudio de las detonaciones ("blasting monitor reports") y los registros de sismógrafo midiendo las vibraciones causadas por las detonaciones. Dicha prueba demostró que las explosiones se habían hecho conforme a la reglamentación establecida. Además, el Ing. Ruiz presentó, ante el foro adjudicador, estudios que concluyen que el número de ciclos necesarios para causar un efecto similar al daño reflejado por las estructuras de los demandantes es mayor al que pudo inducir las detonaciones sobre las estructuras más próximas al desmonte. El propio tribunal de instancia en sus determinaciones de hecho, estableció que las edificaciones más cercanas al área de detonaciones son las de la urbanización Villas de Manatí, sitas al este del área del desmonte y ninguna de estas estructuras está relacionada al caso del epígrafe, como reclamantes en daños.
En conclusión, quedó probado que las detonaciones ocasionadas por Drillex no eran causa eficiente y no habían causado los daños reclamados por los demandantes-recurrentes. Más aún, mediante el estudio estructural que hiciera el Ing. Ruiz en las referidas residencias, se pudo demostrar que los daños estructurales que reflejaban las residencias en cuestión eran preexistentes al trabajo de Drillex y ocasionados por vicios de construcción.
-C-
Alegan también los demandantes-recurrentes que el perito de las demandadas-recurridas ha sido perito de Drillex en nueve casos anteriores contra la recurrida Drillex y que su dictamen pericial siempre es el mismo, esto es, que los daños son ocasionados por vicios de construción. Aun cuando reconocemos que dicha alegación podría tener algún efecto sobre el grado de credibilidad que pueda merecer un testigo pericial, las manifestaciones del perito de las demandadas-recurridas, en el caso del epígrafe, tienen y cuentan con amplia base en las inspecciones realizadas a las estructuras, antes y después de las detonaciones. Esto se pudo reconstatar mediante fotos, videos, gráficas, manifestaciones de los propios demandantes y a través de las propias inspecciones oculares hechas por el tribunal, lo que constituye base más que suficiente para que sustentemos la discreción judicial ejercitada por el ilustrado foro de instancia. Concluimos que el tribunal de instancia, una vez admitidos ambos testimonios periciales, no abusó de su discreción al otorgar mayor valor probatorio al testimonio pericial del perito de las demandadas-recurridas.
II. Relación causal entre daños y alegada causa eficiente
La responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el artículo 1802 del Código Civil. 31 L.P.R.A. § 5141. Para que exista responsabilidad bajo este artículo, es necesario que ocurra: 1) una acción u omisión, 2) un daño, y que 3) ello esté conectado a la correspondiente conducta culposa o negligente. Elba A.B.M. y otros v. U.P.R., 125 D.P.R. 294, 308 (1994). En Puerto Rico rige la doctrina de la causalidad adecuada y conforme a ésta, sólo es "causa" generadora de responsabilidad civil una condición que ordinariamente produce, según la experiencia general, un daño sufrido. Por el contrario, no es "causa" cualquier condición incapaz de generar —parcial o totalmente— el daño sufrido. Arroyo v. E.L.A., 127 D.P.R. _ (1990), 90 J.T.S. 101, Sociedad v. González Padín, 117 D.P.R. 94 (1986), Sepúlveda de Arrieta v. Barreto Domínguez, 94 J.T.S. 158, a la pág. 548, 139 D.P.R. _ (1994).
En cuanto al segundo señalamiento de error, que ahora nos ocupa, los demandantes-recurrentes alegan que el *700 tribunal de instancia erró al concluir que los demandantes omitieron presentar prueba capaz de establecer la relación causal entre la negligencia imputada y el daño alegado. No tienen razón.
-A-
A la luz del expediente en apelación, concluimos que los demandantes-recurrentes no demostraron la existencia de relación causal entre las detonaciones efectuadas por Drillex y los daños reclamados en autos. Para establecer tal conección causal, los demandantes-recurrentes ofrecieron en evidencia, en primer lugar, el testimonio de varios de los demandantes afectados y en segundo lugar, el testimonio pericial y el de dos agentes de la Policía de Puerto Rico.
En cuanto al testimonio de los demandantes debemos recalcar, repitiendo, que éstos afirmaron durante el juicio que con anterioridad a las detonaciones en controversia sus residencias no habían padecido de defectos o vicios. En su mayoría, testificaron que los daños habían surgido con posterioridad a las detonaciones y que no habían luego pintado ni reparado las residencias. No obstante, como queda antes dicho, en el juicio se estableció, a satisfacción del tribunal sentenciador, que las residencias sufrían de los daños reclamados con anterioridad a las detonaciones. Ello se demostró, primordialmente, mediante testimonio pericial, videos y fotografías de las inspecciones pre-detonaciones realizadas por Drillex en las residencias cercanas al mogote. Al comparar los daños previos a las detonaciones con los daños reclamados en el caso de epígrafe, también se pudo demostrar que no habían ocurrido diferencias visibles, inclusive las grietas viejas no se habían extendido luego de las detonaciones. Además, las inspecciones post-detonaciones que llevó a cabo el perito de las demandadas-recurridas revelaron que las grietas tenían en su interior diferentes pinturas y que los techos tenían más de un tratamiento impermeabilizante. Es de notar, que en el contrainterrogatorio éstos también admitieron haber hecho otra reclamación similar años atrás, alegando que el uso de explosivos en la construcción de la carretera de Manatí a Cíales (PR-149) les causó daños similares.
-B-
Como regla general, un tribunal de apelaciones no debe intervenir con la aquilatación de la prueba hecha en instancia a no ser que medie pasión, prejuicio o error manifiesto. Levy v. Autoridad de Edificios Públicos, 94 J.T.S. 32, a la pág. 11632, 136 D.P.R. _ (1994). No obstante dicha determinación de instancia puede ser revocada si "[u]n examen detenido de toda la prueba nos convence que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio únicamente en testimonios de escaso valor, o inherentemente improbables o increíbles." Pueblo v. Maisonave Rodríguez, 91 J.T.S. 67, a la pág. 8838, 129 D.P.R. _ (1991); Pueblo v. Luciano Arroyo, 83 D.P.R. 573, 581-582 (1961). En el presente caso no se ha demostrado que el tribunal de instancia, al aquilatar la prueba testifical, actuara con pasión, prejuicio o parcialidad, o que haya descartado injustificadamente elementos probatorios importantes. La apreciación de hechos que hace el foro de instancia merece gran respeto y deferencia, pues éste tuvo la oportunidad de ver y escuchar a los testigos declarar y de observar su comportamiento. Morales Pérez v. Clínica Femenina de Puerto Rico, 94 J.T.S. 61, a la pág. 11836, 137 D.P.R. _ (1994); Pueblo v. Pagán Santiago, 92 J.T.S. 56, a la pág. 9481, 131 D.P.R. _ (1992). Como vemos, la prueba testifical no demostró relación causal entre la actuación de las demandadas-recurridas y los daños reclamados por los demandantes-recurrentes.
En cuanto al testimonio pericial, conforme al estudio que realizó el perito de los demandantes-recurrentes, la respuesta estructural resultó ser más violenta que la que razonablemente se hubiese esperado según los registros del sismógrafo, contenidos en los informes de detonaciones de las demandadas-recurridas. Por tal razón los demandantes-recurrentes sostienen que dichos registros son cuestionables. Para fundamentar esta impugnación los demandantes-recurrentes ofrecieron los testimonios de dos agentes de la policía para tratar de demostrar que el material explosivo transportado era mucho mayor que el que se reportaba en los informes de detonaciones. Sin embargo, el perito de los demandantesrecurrentes no pudo explicar de qué manera viviendas más próximas a las detonaciones no reflejaron deficiencias estructurales, aun cuando tenían sistemas estructurales similares a las de los deniandantes y debieron responder en forma similar a excitaciones sísmicas, máxime cuando se encontraban más cerca al área de trabajo. Al tribunal de instancia le mereció credibilidad la prueba concerniente al análisis del informe de estudio y control de los disparos preparado por Drillex, el cual reflejó que las cargas utilizadas fueron adecuadas conforme a la reglamentación vigente. De igual forma, las lecturas sismográficas allí contenidas demostraron que las frecuencias registradas estaban por debajo de los niveles máximos *701 recomendados por el Negociado de Minas Federal.
El perito de los demandantes-recurrentes intentó establecer relación causal utilizando un estudio dinámico. No obstante, el perito admitió que la información suministrada en tal modelo no concuerda con la realidad estructural de las viviendas objeto de esta controversia, puesto que en su análisis se consideró a las paredes de bloques como acopladas, cuando la prueba demostró que en las estructuras de los reclamantes estaban desacopladas.
Más aún, el perito de los demandantes-recurrentes admitió durante el juicio, no haber considerado la posibilidad de que las deficiencias alegadas fueran de origen anterior a las detonaciones en controversia. Su estudio se limitó a hacer un análisis de los daños existentes, sin evaluar ni considerar las inspecciones pre-detonaciones realizadas en las residencias de los demandantes. En las inspecciones que realizó este perito, junto a su equipo de trabajo, no se consignaron en el esquema aquellas grietas resanadas, tratamientos impermeabilizantes de techo antiguos, ni depresiones o elevaciones en la superficie del techo. Tampoco se evalúo si el declive y los desagües del techo eran adecuados o si había acumulación de agua o evidencia de ello en los techos de tales viviendas.
En consecuencia, encontramos que el testimonio pericial de la parte demandante-recurrente, tampoco logró establecer la relación causal entre los actos de las demandadas-recurridas y los daños reclamados por los demandantes-recurrentes.
III
En conclusión, examinada la prueba a tenor con las circunstancias particulares del caso que nos ocupa, resolvemos que el conjunto de la misma apunta, preponderantemente, a la inexistencia de una relación de causalidad legal entre las detonaciones realizadas por las demandadas-recurridas y los daños estructurales de las residencias de los demandantes-recurrentes.
Dictamen
Analizado el récord, el dictamen apelado y los errores imputados, encontramos que conforme a las disposiciones de la ley y la jurisprudencia aplicable no se cometieron los errores imputados. Se confirma la sentencia apelada en su totalidad.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIOS 96 DTA 170
1. El perito de los demandantes-recurrentes, Dr. Rafael Jiménez, posee un Doctorado en Ingeniería Estructural con Subespecialidades en Ingeniería Geotécnica y Mecánica Aplicada, otorgado por la Universidad de Cornell. Es además Catedrático de Ingeniería Estructural en el Recinto Universitario de Mayaguez, consultor de la División de Ingeniería Estructural de la Fuerza Aérea y del Cuerpo de Ingenieros de los Estados Unidos para realizar estudios con patrocinio económico federal (GRANTS) sobre el efecto de las vibraciones producidas por sismos o detonaciones en las estructuras. Es también miembro del Comité de Terremotos del Colegio de Ingenieros de Puerto Rico y escribió el Nuevo Reglamento de Construcciones de Edificios.
Por su parte, el perito de las demandadas-recurridas, Ing. Emiliano Ruiz, posee una maestría en Ingeniería Estructural de la Universidad de Illinois, es miembro de la Asociación Internacional de Ingenieros de Explosivos y tiene oficina para la práctica de ingeniería civil, estructural y forense y de consultoría. Además, conoce de la reglamentación, estudies e investigaciones realizadas por el Negociado de Minas Federal desde 1978 y ha participado en investigaciones sobre el efecto de las vibraciones producidas con explosivos en viviendas típicas en Puerto Rico.
2. A este respecto, debemos añadir que el Tribunal Supremo de Puerto Rico ha resuelto que aun en el caso de que se demuestre alguna previa relación entre la parte y su perito y de ello se pueda deducir alguna relación económica "el grado de *702 interés pecuniario que tenga un perito en el desenlace de un caso, por reprobable que sea ante los ojos de algunos per se, no lo descualifica ni le resta valor probatorio a su opinión pericial.” Riley v. Rodríguez de Pacheco, 119 D.P.R. 762, 807 (1987). A esto añadimos que nada malo encontramos aquí, meramente por el hecho de que un litigante hubiere utilizado un mismo perito ingeniero en varios asuntos judiciales y que por ello se hubiere compensado en honorarios, por su tiempo y servicio. Esto, de por sí, no convierte en estereotipado un testimonio pericial y podemos tomar conocimiento judicial que de ordinario los peritos que auxilian la labor judicial cobran honorarios por sus servicios y frecuentemente repiten tal función con relación a una misma parte litigiosa.