Sucesión de Antonia Armstrong Viuda de Rubert et al., peticionarios, *v.* Tribunal de Contribuciones, demandado; Tesorero de Puerto Rico, interventor.

Número 286.

*Sometido:* 18 de noviembre de 1952. *Resuelto:* 10 de diciembre de 1952.

*Cayetano Coll y Cuchí* y *Víctor A. Coll,* abogados de los peticionarios; *Hon. Procurador General Víctor Gutiérrez Franqui* y *José A. García Malpica, Procurador General Auxiliar,* abogados del interventor, demandado en el pleito principal; *Abelardo Ruiz Suria,* como *amicus curiæ.*

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Adquiridas varias fincas por Antonia Armstrong y su esposo, algún tiempo después de la muerte de éste ella vendió su participación indivisa de una mitad en las mismas, y al rendir planillas de contribuciones sobre ingresos por cada uno de los años en que se efectuaron dichas ventas informó como beneficio la diferencia entre el precio obtenido y el

justo valor en el mercado de las respectivas fincas al momento de serle adjudicadas. Habiendo fallecido más tarde la contribuyente, el Tesorero de Puerto Rico notificó a su sucesión sendas deficiencias en relación con dichas ventas[1] por entender que el beneficio a ser informado debió serlo la diferencia entre el precio obtenido por cada finca y el costo de la misma para la sociedad de gananciales a la fecha de su adquisición. Cumplidos los trámites administrativos de rigor, la sucesión acudió al antiguo Tribunal de Contribuciones de Puerto Rico donde al ser llamado para vista el caso fué sometido por las alegaciones. Luego de hacer en su opinión una relación de los hechos que dieron lugar al caso que tenía ante sí y de indicar que "el punto legal envuelto realmente hubiera girado en torno a si debe tomarse como base para calcular la ganancia capital el costo de los bienes al adquirirse originalmente en 1916 que usó el Tesorero, o si debe tomarse el costo para la contribuyente a la fecha de la liquidación de la sociedad ganancial y adjudicación de los bienes a ella por tal concepto, cualquiera que haya sido la fecha de dicha liquidación y adjudicación," ese tribunal manifestó que no era necesario resolver la cuestión legal envuelta y que procedía se declarara sin lugar la demanda toda vez que en ésta "se expresa un valor específico en el mercado por cuerda de los bienes vendidos y sobre ese valor unitario específico, los demandantes sostienen haber obtenido la ganancia capital específica que alegan en cada transacción" y como el Tesorero en su contestación "acepta que tomó como base el costo de los bienes al ser adquiridos originalmente, pero niega en forma expresa que la contribuyente hubiera obtenido los beneficios en las cantidades específicas que aduce", ello implica una negativa como cuestión de hecho y hace imperativo que la querellante pruebe con evidencia clara y convincente esos valores de los bienes a la fecha de la adjudicación ganancial, ya fuere costo o ya

---

[1] Las ventas tuvieron lugar en 1941, 1942, 1943 y 1947 y a esos años correspondieron las deficiencias notificadas.

valor en el mercado y que no debiendo intervenir con las determinaciones del Tesorero, en ausencia de tal prueba, debía dictar sentencia declarando sin lugar la demanda. Así lo hizo, y para revisar esa sentencia expedimos un auto de *certiorari*.

La sucesión peticionaria alega ahora tan sólo que el tribunal recurrido erró "al negarse a resolver el punto controversial establecido en la querella y admitido en la contestación porque en los autos no había pruebas para sostenerlo." El error así apuntado fué claramente cometido. Para resolver la cuestión que el Tribunal de Contribuciones tenía ante sí era innecesario que se ofreciera prueba sobre el costo de las propiedades para la sociedad de gananciales o sobre el valor en el mercado de las fincas adjudicadas en forma proindivisa a la contribuyente y a la sucesión del finado Luis Rubert para la fecha de la muerte de éste. Ese costo y ese valor eran conocidos tanto por el Tesorero como por la querellante. A base del primero fué que dicho funcionario notificó las deficiencias, y fundado en el segundo fué que la causante de la sucesión peticionaria informó en sus planillas los beneficios obtenidos. En verdad, el punto legal a ser determinado lo era si en casos de esta naturaleza la ganancia capital ha de ser determinada tomando como base el costo de los inmuebles para la sociedad de gananciales o el valor en el mercado de los mismos al morir el esposo.

La cuestión es nueva en esta jurisdicción. No así en otras donde al igual que aquí existe la sociedad de gananciales, ni en otras donde no existiendo semejante sociedad los cónyuges adquieren bienes raíces mediante lo que se conoce en Derecho Común y en ciertos estados de la unión americana como un *tenancy by the entirety*.[2]

La sección 5 de la Ley de Contribuciones Sobre Ingresos de 1924 (Leyes de 1925, pág. 401) dispone en lo esencial:

---

[2] Para la definición y alcance de la frase *tenancy by the entirety* véase II *American Law of Property*, pág. 23, sección 6, ed. de 1952.

"(*a*) Excepto lo que más adelante se provee en esta Sección, la ganancia derivada de la venta u otra disposición de la propiedad, será el excedente de la cantidad realizada en dicha venta o disposición, sobre la base que establece la subdivisión (*a*) o (*b*) de la Sección 7, . . ."

Y la sección 7 de la misma ley, en lo aquí esencial, reza así:

"(*a*) *La base para determinar la ganancia o pérdida derivada de la venta u otra disposición de la propiedad adquirida después de febrero 28 de 1913,*([3]) *será el costo de dicha propiedad,* . . .

". . . . . . . . .

"(5) Si la propiedad fué adquirida por manda, legado, o herencia, la base será el justo valor de dicha propiedad en el mercado en el momento de dicha adquisición. . . ." (Bastardillas nuestras.)

En su artículo 20 el Reglamento núm. 1 para la instrumentación de la referida Ley de Contribuciones Sobre Ingresos dispone que: ". . . en general, la ganancia obtenida en la venta u otra disposición de bienes es el exceso de la cantidad obtenida por los mismos sobre el costo u otra base dispuesta en la sección 7 . . .". Y en su artículo 32 que: "La base para determinar la ganancia o pérdida en la venta u otra disposición de bienes adquiridos después del 28 de febrero de 1931, es, en general, el costo de tal propiedad."

Las disposiciones antes copiadas nos parecen claras y terminantes. Tanto la ley como el reglamento de manera palmaria preceptúan que la base para determinar la ganancia será el costo del inmueble, excepto si la propiedad fué adquirida por manda, legado o herencia. Cuando en agosto 6 de 1925 el legislador puertorriqueño aprobó la aludida Ley de Contribuciones Sobre Ingresos tenía pleno conocimiento de que en nuestra isla existía desde hacía muchos años un Código Civil que de manera indubitada provee que todo matrimonio celebrado en Puerto Rico se regirá por el régi-

---

([3]) Las partes admiten que las propiedades aquí envueltas fueron adquiridas después del indicado año.

men de gananciales—salvo que con anterioridad a la celebración del mismo los consortes otorguen capitulaciones matrimoniales—y que a tenor de ese régimen el marido y la mujer hacen suyos por mitad al disolverse el mismo, las ganancias o beneficios obtenidos indistintamente por cualquiera de ellos durante el matrimonio. Véanse, entre otros, los artículos 1295, 1301, 1307, 1312, 1315 y 1322 del Código Civil, ed. 1930. Con ese conocimiento de nuestro derecho sustantivo proveyó, sin embargo, que la base para determinar la ganancia será el costo de la propiedad, salvo la excepción ya mencionada. [2] Es sabido que el cónyuge supérstite recibe su mitad en los gananciales por derecho propio, como partícipe de la sociedad conyugal, y no como legatario o heredero del cónyuge premuerto. *Sucn. Morales* v. *Kieckoefer*, 17 D.P.R. 926. En su consecuencia, la excepción de que habla la ley no le cobija y la base para determinar la ganancia lo era, naturalmente, el costo de las fincas para la sociedad. Siendo ello así, nuestro criterio es que si bien el Tribunal de Contribuciones erró al no entrar en los méritos de la cuestión que tenía ante sí, su sentencia debe, no obstante, ser confirmada toda vez que el procedimiento seguido por el Tesorero se ajustó a derecho.

Conforme antes indicamos, la cuestión que ahora nos compete ya ha sido resuelta por otros tribunales. En *Boykin* v. *Commissioner*, 16 B.T.A. 477, los esposos Boykin adquirieron en 1909 como *tenants by the entirety* una residencia en el Condado de Baltimore por un precio de $10,000. El esposo falleció en 1918 y la cónyuge supérstite vendió la propiedad en el año 1922. La Junta de Apelaciones Contributivas al resolver el caso dijo que la cuestión que tenía ante sí era la base a ser utilizada para determinar la ganancia obtenida por ella. Manifestó en el curso de su opinión que "ya ha sido resuelto que cuando un esposo o esposa—poseedores de bienes en carácter de *tenants by the entirety*— fallece y el otro cónyuge le sobrevive, tales bienes no forman parte del caudal relicto del finado ni están sujetos al

pago de contribución sobre herencia. (Citas.) El mismo razonamiento que hace llegar a semejante conclusión en los casos citados exige que al vender el cónyuge supérstite bienes poseídos como *tenant by the entirety* la base para determinar la ganancia o pérdida debe ser el costo original."

En *Lang* v. *Commissioner*, 23 B.T.A. 854, Walter B. Lang y su esposa adquirieron en 1915 una residencia en el pueblo de Catonsville, Maryland, a un costo de $13,000, suma de la cual el esposo aportó $11,440 y la mujer $1,560. El título fué recibido por ellos como *tenants by the entirety*. El marido falleció en 1924 y al siguiente año la viuda vendió la propiedad en $40,000. Fué el caso ante la Junta de Apelaciones Contributivas y allí se resolvió que la base para determinar la ganancia sobre tal venta era el costo de la propiedad al momento de su adquisición por la contribuyente y su esposo. Llevado el recurso al Tribunal de Circuito de Apelaciones para el Cuarto Circuito éste dictó sentencia confirmando la apelada. *Lang* v. *Commissioner*, 61 F.2d 280. El caso fué entonces al Tribunal Supremo de la Nación (289 U.S. 109, 77 L. ed. 1066) y en opinión emitida por voz del Juez Asociado Sr. Sutherland dicho Tribunal confirmó al de Circuito y se expresó del siguiente modo:

"Un *estate by the entirety* es poseído por el marido y la mujer en común, mediante un solo título. Ellos no poseen el mismo de por mitad, sino que ambos son y cada uno de ellos es dueño de toda la propiedad, es decir, de su totalidad. La tenencia resulta del principio del derecho común de que el marido y la mujer son una sola persona; y se dice que es *sui generis*. A la muerte de uno de ellos 'el supérstite no recibe la propiedad como una nueva adquisición, sino bajo la limitación original, quedando la propiedad simplemente liberada de la participación del otro'. . . . (Cita.) Por tanto, en el caso de autos al ocurrir el deceso del marido, en lo que al caudal aquí envuelto concierne la mujer no heredó nada. Ella simplemente continuó por virtud de la naturaleza de su tenencia, poseyendo y siendo dueña de lo que ya le pertenecía. Dando a las palabras del estatuto su significado natural y corriente, según es

nuestro deber, es obvio que nada recibió ella por vía de manda, legado o herencia.

" . . . . . . . .

" . . . El resultado es que la participación de un condómino o la de *tenants by the entirety* queda incluída de manera expresa al determinarse el valor del caudal relicto para fines de la contribución sobre herencia, mas no queda incluída como la base para determinar la ganancia o pérdida bajo el artículo 204 (*a*). (¹) El incluir de manera expresa en ese inciso el primer caso y el omitirlo en el último sugiere de manera persuasiva que no fué el propósito del Congreso incluir *estates by the entirety* bajo la frase 'por manda, legado o herencia'. Si ésa fué la intención del Congreso, es difícil comprender por qué el inciso (*e*) del artículo 302 no fué adoptado expresamente según lo fueron los incisos (*c*) y (*f*). . . ."

" . . . . . . . .

"Si la legislación que ahora estamos revisando tiene por resultado la imposición de una carga injusta para la contribuyente, el remedio está en manos del Congreso y no de los tribunales. A menos que se infrinja la Constitución, el Congreso puede seleccionar aquéllos que han de estar sujetos al pago de la contribución e imponerles ésta en la forma distinta que crea prudente; y si lo hace en forma clara, cual lo ha hecho aquí, las cortes no están en libertad de modificar la ley mediante interpretación con el fin de evitar injusticias especiales." (⁵)

En *Schiesser* v. *Commissioner*, 28 B.T.A. 640, donde estaban envueltos ciertos inmuebles situados en la ciudad de Filadelfia, Estado de Pensilvania, la referida Junta de Apelaciones Contributivas llegó al mismo resultado.

El Departamento de Tesorería de los Estados Unidos ha

---

(⁴) El artículo 204 de la Ley de Rentas Internas Federal a que se hace referencia más arriba es, en lo aquí pertinente, idéntico al artículo 7 de nuestra Ley de Contribuciones Sobre Ingresos.

(⁵) En idénticos términos podríamos expresarnos en el presente caso. Si la contribución a ser pagada por un cónyuge supérstite al vender su participación en los gananciales ha de determinarse tomando como base el *costo* de la propiedad para la sociedad de gananciales, mientras que la contribución a ser pagada por herederos o legatarios ha de ser determinada tomando el justo valor de los bienes legados o heredados al momento de la muerte de su causante, y si tal determinación resulta injusta para el primero, ello es algo que no está en' nuestras manos corregir sino en manos de nuestra Asamblea Legislativa.

llegado a idéntica conclusión en relación con inmuebles situados en los estados de Tejas y Louisiana, donde al igual que en Puerto Rico impera el régimen de gananciales. *The National City Bank* v. *De La Torre*, 54 D.P.R. 685, 687; II American Law of Property, pág. 122, sección 7.3, ed. de 1952. Al resolver un caso del primero de dichos estados ese Departamento manifestó que la base para determinar la ganancia derivada de la venta u otra disposición de bienes gananciales efectuada por la viuda al adjudicársele su participación es, en lo que respecta a su mitad de los mismos, el costo de la propiedad para la sociedad conyugal. *Internal Revenue Bulletin, Cumulative Bulletin* 1946–2, pág. 58. Y en relación con bienes radicados en Louisiana dijo que "El mero hecho de que todos los bienes de la sociedad conyugal sean incluídos en el caudal relicto del marido a tenor de las disposiciones del artículo 811 (*e*) (2) del Código Federal, a los fines de la contribución sobre herencia, no es inconsistente con la conclusión de que bajo la sección 113 (*a*) del Código, supra, (de Rentas Internas) la base para determinar la ganancia o pérdida sobre la participación de una mitad de los bienes gananciales correspondientes a la viuda es el costo para la sociedad. *Internal Revenue Bulletin, Cumulative Bulletin*, 1947–2, pág. 76. Véanse, además, 4 *Tax Law Review*, págs. 3, 30; y Mertens, *Law of Federal Income Taxation*, sección 21.69, 1951, *Cumulative Pocket Supplement*, pág. 162.

*Debe confirmarse la sentencia apelada.*