JUAN FEDERICO, ISABEL y JOSÉ ANTONIO BASORA DEFILLÓ, demandantes y recurrentes, *v.* RAFAEL PICÓ, SECRETARIO DE HACIENDA, demandado y recurrido.

*Número:* 283 *Resuelto:* 1ro. de abril de 1963

2

*Enrique Báez García,* abogado de los recurrentes; *J. B. Fernández Badillo, Procurador General, Arturo Estrella, Procurador General Interino, Genoveva R. de Carreras, Procurador General Auxiliar,* y *Juan A. Faría, Procurador General Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El Art. 6 de la Ley Núm. 99 de 29 de agosto de 1925, según enmendado por la Ley Núm. 233 de 10 de mayo de 1949, 13 L.P.R.A. sec. 895, provee que siempre que el Secretario de Hacienda lo ordenare se tasarán los bienes que hayan sido objeto de donación *"por su valor en el mer-*

*cado*"(¹) a la fecha del fallecimiento o de la donación. Originalmente se hacía referencia a "una justa y acertada tasación"—Art. 6 de la Ley Núm. 99 de 1925, *supra*. Luego, mediante la Ley Núm. 20 de 27 de abril de 1933 (Leyes, pág. 233) se habla de "una justa y adecuada valoración," que perdura al reformarse por la Ley Núm. 303 de 12 de abril de 1946 (Leyes, pág. 783) el sistema de tributación para fines de la imposición de contribución sobre herencia. Precisamente la única controversia que se plantea en este recurso se relaciona con la impugnación del valor en el mercado(²) de cinco fincas rústicas hecha por un funcionario

---

(¹)Para fines de la imposición de la contribución sobre la propiedad la ley alude a la tasación de la propiedad inmueble *"en su valor real y efectivo"* pudiendo utilizarse por el Secretario de Hacienda *cualquiera de los métodos* reconocidos en materia de valoración o tasación de la propiedad. Art. 3 de la Ley Núm. 117 de 9 de mayo de 1947, según enmendado, 13 L.P.R.A. sec. 432. Cf. Art. 295 del Código Político, ed. 1902, según enmendado, 13 L.P.R.A. sec. 447, que, al señalar como índice el "valor real y efectivo," se refiere a los factores en materia de valoración o tasación, "incluyendo el valor en el mercado, sin tener en cuenta una venta forzada." Véase, *Pueblo* v. *Amadeo*, 82 D.P.R. 102 (1961), y la opinión disidente a las págs. 128 a 132.

En cuanto a la fijación de la base de una propiedad trasmitida por causa de muerte para determinar ganancia o pérdida, la Sec. 113(a)(5) de la Ley de Contribuciones sobre Ingresos de 1954, 13 L.P.R.A. sec. 3113(a)(5), indica que será *"el justo valor en el mercado"* de la propiedad a la fecha de la adquisición. Cf. *Sucn. Armstrong* v. *Tribl. Contribuciones*, 74 D.P.R. 184 (1952).

(²)En el escrito de oposición a la expedición del auto de revisión y en el memorándum presentado por el Secretario de Hacienda se reitera la afirmación de que el legislador no tuvo la intención de adoptar la norma de valor en el mercado como la única para la tasación de los bienes heredados o donados, y se añade que el presente caso ilustra la imposibilidad de utilizarla invariablemente. No obstante, en su alegato final, después de expedido el auto, el recurrido expone que "la regla establecida es a los efectos de que a pesar de las diferencias en el lenguaje utilizado en los distintos estatutos fiscales lo que siempre se busca es el valor en el mercado (*fair market value*) de la propiedad en cuestión."

Como cuestión de hecho la única prueba presentada por el Secretario para sostener su tasación fue un informe del ingeniero Lang que indica que su propósito fue estimar "el valor en el mercado" de varias fincas rústicas.

del Departamento de Hacienda, tasación que sirvió de base para la imposición a los recurrentes de la correspondiente contribución en su carácter de herederos de doña Josefa Defilló González.

La mencionada causante falleció en Mayagüez el día 9 de agosto de 1955 bajo testamento abierto en el cual, después de disponer varios legados, instituyó como sus únicos herederos a sus tres sobrinos los recurrentes Juan Federico, Isabel y José Antonio Basora Defilló. La parte principal del caudal relicto se compone de cinco fincas rústicas sitas en los municipios de Hormigueros y San Germán, que constituyen una unidad para fines de explotación agrícola en la siembra y cultivo de cañas dulces. Su cabida total es de 329.99 cuerdas. El Secretario de Hacienda las tasó en la suma de $263,799.76, valoración que se impugnó por los herederos en la instancia presentada ante el Tribunal Superior, Sala de San Juan, alegando al efecto que la misma es excesiva y que el valor no excede de $130,000. [3]

La prueba documental ofrecida ante el tribunal recurrido consistió en un plano de situación de las cinco fincas, que para los propósitos de esta opinión llamaremos la Hacienda Luisa Josefa, un plano demostrativo de su composición de suelos, un informe de la producción de la hacienda durante la década comprendida entre los años 1945 a 1954, y dos certificaciones registrales para acreditar la venta de una parcela contigua de 22 cuerdas y el arrendamiento de otra finca vecina. Con el testimonio de dos ingenieros familiarizados con la valoración de bienes inmuebles que conocen la heredad se sometió el caso. Es bueno advertir que la sustancia de la atestación del experto del fisco se presentó, por insistencias del juez a quo, en un informe escrito, y que no fue contrainterrogado sobre su contenido a pesar de que tal oportunidad se le reservó a la parte actora. El no tener

---

[3] La prueba presentada por los actores estableció un valor de $160,000.

los conocimientos especializados del juez de instancia nos ha privado de aclarar numerosos ángulos del referido informe en que se funda *exclusivamente* la sentencia contra la cual se recurre. Cf. *Passalacqua* v. *Passalacqua*, 87 D.P.R. 587 (1963).

█ Después de exponer un resumen de la prueba presentada, y de hacer varios comentarios al margen de las opiniones de ambos peritos para corregir equivocaciones y lagunas, el juez sentenciador concluye que "la primera parte del trabajo realizado por el perito W. E. Lang,[4]

---

[4] Se refiere el tribunal a quo a la parte del informe del perito Lang que copiamos a continuación:

*"Tipos de suelos, topografía y erosión:*

I—Fincas A y B

| Suelos | Cuerdas | Declive | Erosión |
|---|---|---|---|
| 1—Toa Limo Arcilloso | 81.40 cds. | Llanas | Ninguna |
| 2—Coloso Arcilloso | 105.40 " | " | " |
| 3—Coloso Limo Arcilloso | 9.90 " | " | " |
| 4—Lares Arcilloso | 5.30 " | " | " |
| Lares Arcilloso | 13.80 " | Semillanas | Muy poca |
| 5—Juncos Arcilloso | 1.60 " | " | " " |
| Juncos Arcilloso | 2.60 " | Llevaderas | Poca |
| 6—Arena de Río | 2.10 " | — | — |

222.10 cds.

| Suelos | Cuerdas | | Valor por cda. | Total |
|---|---|---|---|---|
| T2 AO | 81.40 | x | $1,000.00 | $81,400.00 |
| CS 1AO | 105.40 | x | 900.00 | 94,860.00 |
| CS 2AO | 9.90 | x | 900.00 | 8,910.00 |
| LS 1AO | 5.30 | x | 530.00 | 2,819.00 |
| LS 1B1 | 13.80 | x | 465.00 | 6,417.00 |
| JN 1B1 | 1.60 | x | 340.00 | 544.00 |
| JN 1C2 | 2.60 | x | 240.00 | 625.00 |
| RW | 2.10 | x | 20.00 | 42.00 |

222.10 cds $195,617.00

195,617 ÷ 222.10 = $880.85—promedio por cuerda

Finca A: 218.10 cdas. x $880.85 = $192,113.39

*Edificaciones:*

. . . . . . . . . . .

Valor Mejoras $1,050.00

Total Terrenos y Mejoras $193,163.39

en la que determina que $263,799.76 representa el valor de los cinco predios y las edificaciones en ellas, en agosto de 1955, no ha sido impugnada con prueba contraria fidedigna, y sus estimados relacionados con dicho valor no han sido rebatidos con éxito. Nos toca sostenerlas, y declarar sin lugar la demanda." Así llanamente expresado, parecería que estaríamos impedidos de ejercitar nuestra función revisora por tratarse de una simple aquilatación de prueba, pero como indicamos en *E.L.A.* v. *Fonalledas Córdova*, 84 D.P.R. 573 (1962), en cuanto se refiere a la apreciación de la prueba pericial estamos en las mismas condiciones que el juez sentenciador, ya que no se trata estrictamente hablando de dirimir un conflicto de prueba claramente definido. Aquí no

Finca B: 4.00 cuerdas x $880.85 = $3,523.40

II—Fincas C, D y E

| Tipos de Suelos | Area | Declive | Erosión |
|---|---|---|---|
| 1—Toa Limo Arcilloso | 27.73 | Llana | Ninguna |
| 2—Toa Lómico Arcilloso | 3.50 | Llana | " |
| 3—Coloso Arcilloso | 26.29 | Llana | " |
| 4—Lares Arcilloso | 9.54 | Semillana | Muy poca |
| 5—Juncos Arcilloso | 7.85 | Semillana | Muy poca |
| Juncos Arcilloso | 13.99 | Llevadera | Poca |
| 6—Múcara Lómico Arcilloso | 13.78 | Escarpada | Moderada |
| 7—Arenas de Río | 5.21 | — | — |
| Total | 107.89 cdas. | | |

| Suelos | Cuerdas | | Valor por cuerda | Totales |
|---|---|---|---|---|
| T2—AO | 27.73 | x | $1,000.00 | $27,730.00 |
| T3—AO | 3.50 | x | 1,000.00 | 3,500.00 |
| Cs 1AO | 26.29 | x | 900.00 | 23,661.00 |
| Ls1B1 | 9.54 | x | 465.00 | 4,436.00 |
| JA1 B1 | 7.85 | x | 340.00 | 2,669.00 |
| JA1C2 | 13.99 | x | 240.00 | 3,358.00 |
| Mu 3D3 | 13.78 | x | 120.00 | 1,654.00 |
| | 5.21 | x | 20.00 | 104.00 |
| | 107.89 | | | $67,112.00 |

$$\frac{\$67,112.00}{107.89} = \$622.05 \text{ promedio por cuerda}$$

existe discrepancia notable en cuanto a las características físicas de la hacienda objeto de valoración. Y aun cuando la presunción de corrección de las determinaciones administrativas del Secretario de Hacienda se extiende a un caso como el de autos, su efecto no puede prevalecer si se demuestra que en la valoración llevada a cabo y sostenida por el tribunal se siguió un método en forma rígida, sin considerar otros factores que surgen de la prueba y que indudablemente afectan la determinación final de valor en el mercado. Cf. *Vilanova* v. *Secretario Hacienda*, 83 D.P.R. 74, 82 (1961); *Collazo* v. *Secretario de Hacienda*, 82 D.P.R. 650 (1961); *Carrión* v. *Tesorero de P.R.*, 79 D.P.R. 371, 385 (1956).

 Reiteradamente hemos indicado que el valor en el mercado es el precio que un comprador estaría dispuesto a pagar en una venta voluntaria y que un vendedor estaría dispuesto a aceptar, considerando para ello las condiciones en que se halle el bien a la fecha de la valoración y el uso más productivo o beneficioso a que podría dedicarse dentro de un futuro razonablemente cercano. *E.L.A.* v. *Fonalledas Córdova*, 84 D.P.R. 573 (1962); *E.L.A.* v. *317.813 Cuerdas de Terreno*, 84 D.P.R. 1 (1961); *Pueblo* v. *Colón*, 73 D.P.R.

---

Finca C:
 47.60 cdas. x $622.05 = $29,609.58

Finca D:
 51.83 cdas. x $622.05 = $32,240.85

Finca E:
 8.46 cdas. x $622.05 = $ 5,262.54

*Resumen:*

| Fincas | Cuerdas | Tierras | Mejoras | Total |
|--------|---------|---------|---------|-------|
| A | 218.10 | $192,113.39 | $1,050.00 | $193,163.39 |
| B | 4.00 | 3,523.40 | — | 3,523.40 |
| C | 47.60 | 29,609.58 | — | 29,609.58 |
| D | 51.83 | 32,240.85 | — | 32,240.85 |
| E | 8.46 | 5,262.54 | — | 5,262.54 |
| Totales | 329.99 | $262,749.76 | $1,050.00 | $263,799.76" |

579 (1952); *Pueblo* v. *Huyke*, 70 D.P.R. 754, 756 (1950). Para ello, las ventas de propiedades similares constituyen el principal índice de valor en el mercado. *Pueblo* v. *Amadeo*, 82 D.P.R. 102, 122 (1961). Esa es la primera dificultad con que nos tenemos que enfrentar en el presente caso, pues no hay en realidad ventas similares contemporáneas en la comarca que proporcionen una base adecuada de comparación para el proceso de evaluación. Durante el curso de la vista se hizo referencia a la venta de una parcela contigua de 22 cuerdas por precio de $22,000, pero la diferencia en cabida es tan aparente que juiciosamente no se consideró como una venta similar, sino solamente a los fines de la comprobación o verificación de la tasación hecha por el perito del fisco, por su comparabilidad en cuanto a composición del suelo y topografía.(5) Tampoco hay discrepancia sobre el hecho de que la finca se dedica a su mejor uso, o sea, a la producción de cañas, con la reserva que apuntaremos luego.

 Es preciso recurrir a la consideración de otros factores que ofrece la evidencia presentada. La tasación del perito Lang se fundó exclusivamente, no importa su afirmación en contrario, en los tipos de suelos, y en la topografía y erosión de los predios. El ingeniero Colom, perito de

---

(5) Aun en cuanto a este aspecto el informe del tasador Lang da la impresión de que se trata de una justificación concebida *a posteriori* para sostener su valoración de la Hacienda Luisa Josefa, pues a pesar de ser contiguas las fincas, la misma clase de suelo se valora en distinta forma, según señalamos a continuación:

| Tipo de Suelo | Hacienda Luisa Josefa | Predio de 22 cuerdas |
|---|---|---|
| Toa limo arcilloso | $1,000 por cuerda | $1,245 por cuerda |
| Coloso limo arcilloso | 900 por cuerda | 1,130 por cuerda |
| Lares arcilloso (llano) | 530 por cuerda | 665 por cuerda |
| Lares arcilloso (semillano) | 465 por cuerda | 580 por cuerda |

Puede admitirse que exista alguna razón que explique estas diferencias, pero del informe no aparece. Igual situación se presenta en cuanto a la valoración atribuida a los distintos tipos de suelo de la finca Macona, en donde también se observan distintas valoraciones para el mismo tipo de suelo, a pesar de que se trata de una finca de cabida similar, en la misma vecindad, situada a un kilómetro de la Luisa Josefa.

los recurrentes, aplica marcadamente un criterio de rendimiento económico de los terrenos. Aunque ambos manifestaron que tomaron en consideración otros factores, la lectura de sus testimonios o informes nos convence que en realidad se limitaron a seleccionar una fórmula más o menos rígida basada en sus preferencias sobre el método específico de valoración. No hay duda de que estos factores—naturaleza de la composición de suelos y topografía, así como el rendimiento económico y productividad—deben tomarse en consideración, pero no en forma aislada y desvinculados entre sí, sino en conjunto, y en adición a otras condiciones que sin lugar a dudas afectan el valor en el mercado. Un hecho que no puede ignorarse es que la finca en 1955 se encontraba afecta a un contrato de arrendamiento cuyo término no expiraba hasta 1958, mediante el pago de un canon de $10,000 anuales, que capitalizados al tipo del 6% sugerido por el recurrido, arrojaría una valoración de aproximadamente $166,666. Cualquier comprador deseoso de adquirir la heredad en 1955 tenía que tomar esta circunstancia en cuenta por tratarse probablemente de un arrendamiento desventajoso para el arrendador.[6] Significativo es también que solamente se dedican poco más de dos terceras partes de la finca a la siembra de cañas—216 cuerdas—y hemos de presumir que el arrendatario—la Sucn. Mateo Fajardo, dueña de la vecina Central Eureka—dada la proximidad de su molino, realizaba el cultivo más intenso posible para obtener un mayor aprovechamiento. Finalmente, no podía descartarse absolutamente el testimonio de Colom sobre la forma en que determinó la valoración a base de la productividad del predio considerando para ello un promedio de beneficios de $1.50 por tonelada de caña producida. El informe de Lang sobre este aspecto considera el beneficio promedio real-

---

[6]A partir de 1958, y por un término de 10 años, se convino un contrato mediante el pago de un canon de $13,000 anuales, cuya capitalización al tipo indicado sería de aproximadamente $216,666.

mente obtenido durante los últimos ocho años, (7) pero ignora que los beneficios han seguido una escala descendente, hasta el punto de que en el año inmediatamente anterior a la fecha de la tasación fue de sólo $1.07 por tonelada. (8)

Tomando en consideración todas las circunstancias y los distintos factores y condiciones a que hemos hecho mención, estimamos que una valoración de las tierras, excluyendo las mejoras, (9) en la suma de $200,000 representa una tasación más justa y razonable y un reflejo más adecuado del valor en el mercado de la Hacienda Luisa Josefa en agosto de 1955.

*Se dictará sentencia fijando el valor de las cinco fincas que forman parte del caudal en la cantidad de $200,000, y se devolverá el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

---

(7) El resultado de su aplicación de este método fue una valoración de $283,658, pero el juez recurrido señala la comisión de un error en la determinación del beneficio promedio, que reduciría la misma a $241,312.33.

(8) El testigo Colom aseveró que el promedio de los años 1954 a 1958 fue de $1.26 por tonelada producida.

(9) La tasación de las mejoras en $1,050 no fue impugnada.