PROFESSIONAL REALTY CORPORATION, demandante y recurrida, *v.* SECRETARIO DE HACIENDA, demandado y recurrente.

*Número:* R-63-144 *Resuelto:* 5 de abril de 1965

J. B. *Fernández Badillo*, Procurador General, Rodolfo Cruz Contreras, *Sub-Procurador* General, y J. F. *Rodríguez Rivera*, *Procurador General Auxiliar*, abogados del recurrente; *Celestino Iriarte*, F. *Fernández Cuyar* y *Héctor González Blanes*, abogados de la recurrida.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

A los fines de la imposición de la contribución sobre la propiedad para el ejercicio fiscal 1951–52, el Secretario de Hacienda de Puerto Rico valoró un inmueble propiedad de la corporación recurrida—solar sito en la Avenida de Diego Núm. 308 de Santurce, con edificación y equipo—en la suma de $694,000. Al verificarse la primera revisión luego de implantarse el sistema de tasación científica dicha valoración se aumentó para el año contributivo 1958–59 a $1,208,530, casi el doble de la estimación original. No conforme con esta determinación administrativa, la contribuyente pagó la parte de la contribución con la cual estaba conforme y en término hábil presentó la querella correspondiente ante el Tribunal Superior, en la cual alegó que la alteración en la valoración resulta en una tasación superior a la que "de conformidad

con las normas de tasación para fines contributivos" es procedente; que el valor determinado es mayor que el valor en el mercado del inmueble; y que, en todo caso, no debe considerarse una valoración en exceso de $800,000 a los fines de la imposición de la contribución territorial.

Luego de celebrado un juicio en los méritos, que se redujo prácticamente a una contienda entre peritos, el tribunal a quo emitió la sentencia que copiamos a continuación, mediante la cual fijó la cantidad de $1,035,348.75 como el valor para la imposición de la contribución que representa una disminución de $173,181.25 del atribuídole por el Secretario y un aumento de $235,348.75 sobre el alegado por la contribuyente:

### "SENTENCIA

"El Secretario de Hacienda de Puerto Rico valoró el solar, edificio y equipo propiedad de la demandante en la Avenida De Diego 308 de Santurce conocido por 'Proffessional [*sic*] Building' para el año 1951–52 en la suma de $694,000.00 que representaba un 76% del valor para fines contributivos de la propiedad.

"Para el año contributivo 1958–59 se tasó esa misma propiedad en $1,208,530.00 que representaba un 90% del valor para fines contributivos de la propiedad.

"La tasación de 1958–59 se hizo tomando en consideración un aumento de 25% en costos de materiales y mano de obra y el aumento del 76% al 90% concedido para este último año.

"Elevando la tasación de 1951–52 del 76% al 100% la propiedad tendría un valor de $920,310 para ese año. Aumentando el 25% ese valor a 1958–59 sería de $1,150,387.50. El 90% concedido para ese año resulta ser $1,035,348.75 que fijamos como valor de la propiedad para fines contributivos para el año 1958–59.

"La valoración de 1951–52 se hizo a base de estimados por tratarse de una estructura especial. La valoración de 1958–59 se hizo a base de los estimados originales más el aumento en costos de construcción. Esta valoración a base de estimados toma en consideración el valor del solar, gastos de planos, pies cuadrados de construcción, acero, puertas, ventanas, clase de materiales

usados en la construcción, costos por partidas, o sea cuanto costaría construir a base de planos.

"La tasación de 1958–59 de $1,208,530.00 (90%) elevada al 100% resulta ser $1,342,811.00. Construir el edificio costó $1,388,000 en 1949.

"Para que la posición del demandado sea consistente, y aceptando como correcta su tasación original de 1951–52 ($694,000.00) es que hemos fijado la tasación en $1,035,348.75 considerando los factores del cambio en el tipo de 76% al 90% y del aumento de 25% en costos de materiales y mano de obra.

"La propiedad inmueble se tasará en su valor real y efectivo utilizando cualquiera de los métodos y factores reconocidos en materia de valoración o tasación de propiedad para que las mismas resulten uniformes. Sec. 432, Tit. 13, L.P.R.A.

"A nuestro juicio resulta justo y razonable el método usado por el demandado para el año 1951–52 con el aumento a considerarse para el año 1958–59. Otro método resultaría muy especulativo y sujeto a personalísimos criterios.

"Se declara con lugar la demanda y se fija como valor de la propiedad a que se refiere esta acción la suma de $1,035,348.75 para el año 1958–59 para tierras, estructura y equipo. El demandado expedirá nuevos recibos de contribución por esta suma. Corresponde al solar $101,067.00 y el resto a la estructura."

El Secretario de Hacienda instó el presente recurso para que se revise la sentencia transcrita. Señala que el tribunal recurrido cometió error: (1) al considerar como base de la valoración una tasación que había formulado el recurrente para años anteriores la que, conforme a la prueba, resultaba incorrecta; (2) al negarse a seguir el método de valoración utilizado por el Secretario de Hacienda; y (3) al negarse a admitir evidencia pertinente y al ignorar la prueba presentada que desvirtuaba el método seleccionado por el juez recurrido para arribar a su determinación de valoración.

■ El principio fundamental que anima el régimen de tasación científica aparece tersamente delineado en el primer párrafo del Art. 3 de la Ley Núm. 117 de 9 de mayo de 1947, 13 L.P.R.A. sec. 432, en el siguiente lenguaje: "El Secretario de Hacienda clasificará y tasará toda la propiedad inmueble

en su valor real y efectivo utilizando *cualquiera* de los métodos y factores reconocidos en materia de valoración o tasación de la propiedad, de manera que las tasaciones *para cada uno de los tipos de propiedad resulten uniformes.*" Escuetamente, para evitar la desigualdad resultante de distintas tasaciones para propiedades de características similares, se instituye la uniformidad como norma, en abstracción completa de la individualidad de las cosas, salvo los casos excepcionales. No se intenta, como señalamos en *Pueblo* v. *Amadeo*, 82 D.P.R. 102, 107 (1961), determinar fielmente el valor en el mercado de la propiedad inmueble, sino establecer normas de valoración con tal exactitud y factores científicos que permita fijar tipos adecuados y equitativos de valoración para fines contributivos. De Pedro, *La Tasación Científica*, 13 Rev. C. Abo. P.R. 385 (1950). Dedúcese de lo expuesto que el rigor del escrutinio judicial debe enderezarse a inquirir si la tasación oficial responde a la norma de uniformidad apuntada, independientemente de que exista otro método que eficazmente pueda ayudar a establecer valor en el mercado, pues sólo así se lograría que la carga contributiva se distribuya en forma justa, equitativa y razonable entre la población contributiva. Véase, *Tasación y Revaloración de la Propiedad Inmueble*, publicación del Departamento de Hacienda (1958).

No es necesario elaborar mucho para percibir inmediatamente que el tribunal recurrido se apartó de los principios enunciados y que los reparos señalados por el Secretario son procedentes. Como se verá, el juez a quo seleccionó un método que le pareció más apropiado y descartó no sólo el criterio de uniformidad, sino el efecto de la evidencia aducida. Lo que nos lleva a hacer un breve resumen de la prueba.

El inmueble, conocido como Professional Building, comenzó a construirse en o alrededor del año 1948.[1] Su costo

---

[1] Con el propósito de estimular la industria de la construcción, la Asamblea Legislativa aprobó la Ley Núm. 151 de 11 de mayo de 1948, 13 L.P.R.A. secs. 552 y ss., eximiendo de contribución sobre la propiedad,

total, incluyendo el equipo instalado, ascendió a alrededor de $1,388,000. (²) Cuando se hizo la valoración inicial para 1951–52 se realizó a base de estimados debido a que para esa fecha se trataba de una estructura que acusaba características particulares, y como tal no estaba prevista en el manual de clasificaciones del sistema. La preparación de tablas para lograr la uniformidad deseada en cuanto a edificaciones similares no era fácil. El Professional Building puede considerarse como un pionero en edificios de su tipo. Quien recuerde la línea del horizonte de Santurce para la época puede adverar sobre la corrección de esta afirmación. Aun así la tasación hecha fue de alrededor de $1,020,000, pero por gestiones da la contribuyente, se consideró un factor especial de depreciación de sobre-desarrollo—construir una estructura en un lugar en donde no se justifica económicamente—y de ahí que finalmente se fijara para fines contributivos en $694,000. Como esta cifra representaba un 76% de la tasación, elevada a su total representaría $920,310. Así permaneció hasta la revisión de 1957.

En términos generales le revisión de 1957 consideró los cambios ocurridos en el mercado, especialmente los que respondían a la transformación progresiva en el orden material, y fundamentalmente al incremento en el costo de construcción que se determinó era alrededor de un 25%, para ser

incluyendo las que estuvieren impuestas para el año 1948–49, todo edificio que estuviere en construcción en 1 de julio de 1948 ó que se empezara a construir después de la misma fecha incluyendo el equipo y maquinaria que se adquiriera para instalarse en el mismo. La exención se concedió hasta la fecha de la terminación o hasta que estuviese en condiciones de usarse para los fines a que se le destinaba, pero en ningún caso por un término mayor de 3 años.

(²) En el informe anual de la corporación para el año 1958–59 figura el edificio como un activo fijo de $1,349,476.40 y una depreciación acumulada de $234,844.17, así como maquinaria y equipo mueble por valor de $361,191.38 con una depreciación acumulada de $241,844.17. La diferencia puede tal vez explicarse por la adición de mejoras capitalizables al edificio y al equipo.

exactos, 24.91%, incluyéndose para ello el sobrevenido en los materiales y en la mano de obra. Cobra importancia en cuanto a este último, la aparición de nuevas contribuciones, como la del seguro para desempleo y el seguro social federal y el aumento en los tipos por el Fondo del Seguro del Estado.

Específicamente en cuanto al Professional Building no se hizo una operación puramente de cálculos, pues se *descartó completamente* el valor estimado de 1951–52, por disponerse ya de la información necesaria para establecer una clasificación específica que cubriera edificios de su tipo. Se eliminó además el factor de depreciación de sobre-desarrollo ya que no se justificaba su aplicación con vista del desenvolvimiento económico ascendente. Ya para esta fecha, el edificio era uno de tantos. Se consideró por consiguiente la información sobre el costo de construcción y el incremento en los costos, restándosele la concesión de la depreciación ordinaria, [3] o sea, el método conocido como costo de reproducción actual. Se obtuvo finalmente un valor total de $1,208,530, distribuido en la siguiente forma: solar, $90,960; estructura, $1,077,290; y maquinaria, $40,280. Vale la pena aclarar que a los fines de valoración también se consideró un índice, no ya de 76% como en 1951, sino que se aumentó a 90%. [4]

La prueba de la contribuyente se centralizó a establecer el valor del edificio a base del método de capitalización de rentas y que según testimonio pericial no es el más acertado y confiable para un sistema de tasación uniforme, pues requería un examen individual de cada propiedad y estaría sujeto a factores de fijación de rentas ajenos a un ordenado proceso de valoración.

---

[3] Según información oficial, estimando que la próxima revisión tomaría de siete hasta diez años, se reajustó el valor presente en el mercado acreditando a cada edificación una depreciación adelantada por el número de años durante el cual no se volvería a hacer una revisión general.

[4] Claro está este aumento se compensó con un ajuste a los tipos contributivos del Estado Libre Asociado y los distintos municipios.

■ Como partió de una base errónea—la tasación hecha en 1951—e ignoró la explicación lúcida de los funcionarios del Departamento de Hacienda, la conclusión del tribunal a quo tiene que ser necesariamente dejada sin efecto. En realidad en vista de la estructura del sistema mismo de tasación científica, la intervención de los tribunales con la determinación administrativa está bastante limitada a casos en que, por circunstancias especialísimas, el patrón de uniformidad deba descartarse, o cuando siendo aplicable, la evaluación de los distintos factores conduzca a un resultado claramente arbitrario, injusto o caprichoso. Cf. *Basora Defilló* v. *Srio. de Hacienda*, 88 D.P.R. 1 (1963); *E.L.A.* v. *Fonalledas Córdova*, 84 D.P.R. 573 (1962); *Tes.* v. *Tribl. Contribuciones y Sucrs. Abarca*, 69 D.P.R. 878 (1949). Ninguno de estos supuestos concurre en el presente caso.

*Por los motivos expuestos, se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 1 de mayo de 1963, y se desestimará la demanda.*